

UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
NORTHERN DIVISION

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

|  |  |
|---|---|
| TERRI LAFONTAINE TORGERSON and BIG TALK, INC., a South Dakota corporation,  Plaintiffs,  -vs.-  WELLS FARGO BANK SOUTH DAKOTA, N.S., a corporation,  Defendant. | CIV 05-1050  MEMORANDUM OPINION AND ORDER |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

Plaintiffs filed an amended complaint contending that defendant's conduct surrounding various loan applications violated the Federal Equal Credit Opportunity Act, 15 U.S.C. § 1691, *et seq.*, the Fair Housing Act, 42 U.S.C. § 3605, and the Civil Rights Act, 42 U.S.C. §§ 1982 and 1983. Plaintiffs also allege state law claims of violation of a duty to refrain from self-serving conduct, negligence, fraud, deceit, and reckless and intentional conduct entitling plaintiffs to punitive damages. Defendant filed a motion to dismiss plaintiffs' first claim for relief on the basis that the claim was not asserted within the statute of limitations and to dismiss the fifth claim for relief for failure to state a claim. Defendant also filed a motion for partial summary judgment as to all claims except for the violation of duty and fraud and deceit claims. The summary judgment motion is still in the briefing stages and will not be addressed in this opinion.

## DECISION

### I. Limitations

The parties agree that Equal Credit Opportunity Act claims must be brought within two years from the date of occurrence. 15 U.S.C. § 1691e(f). The parties also agree that civil rights claims under 42 U.S.C. §§ 1981 and 1982 must be brought within South Dakota's most analogous statute of limitations, three years in this case pursuant to SDCL 15-2-15.2. The parties dispute when the cause of action set forth in Count I accrued.

Plaintiffs allege in their first claim for relief that defendant ignored their loan application in 2001 and that such conduct was motivated by discriminatory animus against Native American borrowers.[1] Plaintiffs did not file their complaint until November 5, 2005, well outside the two and three year statutes of limitation. Plaintiffs contend that their claims in Count I are timely because they have alleged "continuing violations" of the discrimination statutes.

Plaintiffs point to facts not alleged in their complaint which show a pattern and practice of discrimination. "If, on a motion under Rule 12(b)(6) . . . matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." Fed. R. Civ. P. 12(d). This "court has complete discretion to determine whether or not to accept any material beyond the pleadings that is offered in conjunction with a Rule 12(b)(6) motion." Stahl v. U.S. Dept. of Agriculture, 327 F.3d 697, 701 (8th Cir. 2003) (*quoting* 5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1366, at 491 (2d ed.1990)). Plaintiffs did not submit "material" beyond the pleadings but instead set forth unverified allegations in their brief in resistance to the motion to dismiss. The motion to dismiss will not be converted to one for summary judgment because the issues can be decided based upon the pleadings.

The continuing violation doctrine allows a court to consider allegedly discriminatory acts that occurred beyond the statute of limitations where those acts were part of a continuing pattern of discrimination and where at least one act of discrimination occurred within the limitations period. Sowell v. Alumina Ceramics, Inc., 251 F.3d 678, 682 (8th Cir. 2001) (Title VII claim).

> This doctrine tolls the statute of limitations in situations where a continuing pattern forms due to discriminatory acts occurring over a period of time, as long as at least one incident of discrimination occurred within the limitations period. The doctrine is available when "the unlawful employment practice manifests itself over time, rather than as a series of discrete acts." This manifestation, however, must be more than the mere consequences of past discrimination- "the proper focus is upon the time of the discriminatory acts, not upon the time at which the consequences of the acts became most painful."

---

[1] A corporation cannot be the subject of racial discrimination. Oti Kaga, Inc. v. South Dakota Housing Development Authority, 2002 DSD 1 ¶ 35 n. 8, 188 F.Supp.2d 1148, 1159 n. 8.

Treanor v. MCI Telecommunications Corp. 200 F.3d 570, 573 -574 (8th Cir. 2000) (internal citations omitted) (Minnesota Human Rights Act claim). Under the continuing violation theory, "each overt act that is part of the violation and that injures the plaintiff . . . starts the statutory period running again, regardless of the plaintiff's knowledge of the alleged illegality at much earlier times." Midwestern Machiner Co., Inc. v. Northwest Airlines, 392 F.3d 265, 269 (8th Cir. 2004) (*quoting* Klehr v. A.O. Smith Corp., 521 U.S. 179, 189, 117 S.Ct. 1984, 138 L.Ed.2d 373 (1997) (Sherman Antitrust Act case)). The continuing violation theory allows a plaintiff to include events which occurred outside the limitations period as part of a properly-filed case.

The United States Supreme Court clarified in National Railroad Passenger Corp. v. Morgan, 536 U.S. 101, 122 S.Ct. 2061, 153 L.Ed.2d 106 (2002), that the continuing violation theory is not available to toll the limitations or revive a claim involving a separate act of discrimination that occurred outside the limitations period. Wedow v. City of Kansas City, Mo., 442 F.3d 661, 670 (8th Cir. 2006).

> "[D]iscrete acts that fall within the statutory time period do not make timely acts that fall outside the time period." [*Morgan*] at 112, 122 S.Ct. 2061. Prior acts may be used as background evidence in support of a timely claim. Id. at 113, 122 S.Ct. 2061. We have since acknowledged that in the disparate treatment context, " '[d]iscrete acts such as termination, failure to promote, denial of transfer, or refusal to hire' are 'not actionable if time barred, even when they are related to acts alleged in timely filed charges.'" *Tademe v. Saint Cloud State Univ.*, 328 F.3d 982, 987 (8th Cir.2003) (*quoting Morgan*, 536 U.S. at 114, 122 S.Ct. 2061) (alteration in original). "In other words, each occurrence starts a new clock for purposes of filing [a claim] related to that act, and an employee must file [a claim within the period of limitations.]

Wedow v. City of Kansas City, *supra*. It is clear that the Supreme Court rejected in Morgan the continuing violation theory as a means to toll the limitation period for discrete acts of discrimination that occurred prior to the limitation period for a timely filed charge." *Id*. at 673.

Plaintiffs alleged in their complaint that they applied to Wells Fargo for a start-up loan to construct and operate multiple Taco Johns restaurants in various Indian Reservation communities. In their first claim for relief plaintiffs claim that defendant "failed to respond to Plaintiffs' loan application, submitted in late 2000 or early 2001" in a timely fashion, amounting to discrimination in violation of the Equal Credit Opportunity Act and the Civil Rights Acts. The

3

conduct alleged in the first claim for relief is a discreet act of alleged discrimination which was not asserted within the period of limitations and should be dismissed.

## II. Failure to State a Claim.

Plaintiffs allege in their fifth claim for relief that the defendant acted with racially and sexually discriminatory intent in delaying the submission of a BIA loan guaranty package on behalf of the Sisseton Wahpeton Sioux Tribe to secure a guarantee for a loan the Tribe sought from Wells Fargo, which loan proceeds were alleged to have been used to buy plaintiffs' propane business. Plaintiffs claim such conduct violated the Fair Housing Act, the Civil Rights Act, and the Equal Credit Opportunity Act. Defendant contends plaintiffs have failed to state a claim as to the conduct alleged in Count V. Plaintiffs acknowledge that they have failed to present a claim under the Fair Housing Act and agree to dismiss that claim.

A plaintiff must establish subject matter jurisdiction, for which standing is a prerequisite. Jones v. Gale, 470 F.3d 1261, 1265 (8th Cir. 2006). "Standing includes both a constitutional and a prudential component." Am. Ass'n of Orthodontists v. Yellow Book USA, Inc., 434 F.3d 1100, 1103 (8th Cir. 2006). "A party invoking federal jurisdiction must establish that he has met the requirements of both constitutional and prudential standing." Delorme v. United States, 354 F.3d 810, 815 (8th Cir. 2004) (*citing* Lujan v. Defenders of Wildlife, 504 U.S. 555, 561, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992)). When ruling on a motion to dismiss for want of standing, the court "must accept as true all material allegations of the complaint, and must construe the complaint in favor of the complaining party." Warth v. Seldin, 422 U.S. 490, 501, 95 S.Ct. 2197, 2206, 45 L.Ed.2d 343 (1975).

The "irreducible constitutional minimum of standing" consists of three elements. *See* Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992). Number one, the party must have suffered some "injury in fact," an actual or imminent concrete and particularized invasion to a legally protected interest; second, the injury must be fairly traceable to what the defendant did or did not do; and third, the injury must be something that can be redressed by a favorable decision. *Id*; Gale, 470 F.3d at 1265. Plaintiffs have the burden of establishing these three elements. Campbell v. Minneapolis Public Housing Authority, 168 F.3d 1069, 1073 (8th Cir. 1999).

4

"Even if a plaintiff meets the minimal constitutional requirements for standing, there are prudential limits on a court's exercise of jurisdiction." Ben Oehrleins & Sons & Daughter, Inc. v. Hennepin County, 115 F.3d 1372, 1378 (8th Cir. 1997). One of these prudential limitations is a requirement that "a litigant must assert his or her own legal rights and interest, and cannot rest a claim to relief on the legal rights or interests of third parties." Powers v. Ohio, 499 U.S. 400, 410 (1991).

> [A] plaintiff may have Article III standing but the claimed injury may run afoul of prudential standing because its effects are indistinct from those felt by persons generally, thus depriving the plaintiff of a unique stake in the controversy. *See Warth v. Seldin*, 422 U.S. 490, 499, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975). A plaintiff may also run afoul of prudential standing limits because the claim rests on the legal rights of third-parties, *Warth*, 422 U.S. at 499, 95 S.Ct. 2197, or the interest, though real, may not fall within the zone of interests protected by the statutory provision invoked, *Bennett*, 520 U.S. at 162, 117 S.Ct. 1154.

Oti-Kaga, Inc. v. South Dakota Housing Development Authority, 342 F.3d 871 (8th Cir. 2003). The district court must determine "'whether the interest sought to be protected by the complainant is arguably within the zone of interests to be protected or regulated by the statute or constitutional guarantee in question.'" Davis v. U.S. Bancorp, 383 F.3d 761, 767 (8th Cir. 2004) (*quoting* Bennett v. Spear, 520 U.S. 154, 163, 117 S.Ct. 1154, 137 L.Ed.2d 281 (1997) (*quoting* Assn of Data Processing Serv. Orgs., Inc. v. Camp, 397 U.S. 150, 153, 90 S.Ct. 827, 25 L.Ed.2d 184 (1970))).

### A. Equal Credit Opportunity Act.

In order to establish a prima facie case of discrimination under the Equal Credit Opportunity Act, the plaintiffs must demonstrate that 1) they were members of a protected class; 2) they applied for and were qualified for an extension of credit; 3) the extension of credit was rejected despite their qualifications; and 4) others of similar credit stature were extended credit or given more favorable treatment than the plaintiffs. Rowe v. Union Planters Bank of Southeast Missouri, 289 F.3d 533, 535 (8th Cir.2002). Plaintiffs' fifth claim for relief is not that they applied for an extension of credit but that the Tribe applied for credit. Plaintiffs contend that, in essence, they were the intended third party beneficiaries of the Tribe's application for credit.

The regulations promulgated pursuant to the Equal Credit Act define the term "applicant."

> Applicant means any person who requests or who has received an extension of credit from a creditor, and includes any person who is or may become contractually liable regarding an extension of credit. For purposes of § 202.7(d), the term includes guarantors, sureties, endorsers, and similar parties.

12 C.F.R. § 202.2(e). *See also* 15 U.S.C. § 1691a(b) ("the term 'applicant' means any person who applies to a creditor . . ."). Plaintiffs were not "applicants" for the loan at issue in the fifth claim for relief. They are not within the zone of interests protected by the Equal Credit Act. The Equal Credit Opportunity Act claim set forth in plaintiffs' fifth claim for relief must be dismissed.

### B. 42 U.S.C. § 1981.

Section 1981 provides:

(a) Statement of equal rights

> All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

(b) "Make and enforce contracts" defined

> For purposes of this section, the term "make and enforce contracts" includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship.

(c) Protection against impairment

> The rights protected by this section are protected against impairment by nongovernmental discrimination and impairment under color of State law.

The function of § 1981 is to protect "the equal right of '[a]ll persons within the jurisdiction of the United States' to 'make and enforce contracts' without respect to race. Domino's Pizza, Inc. v. McDonald, 546 U.S. 470, 474, 126 S.Ct. 1246, 1249, 163 L.Ed.2d 1069

(2006). Plaintiffs can seek relief under § 1981 only if they "have rights under the existing or proposed contractual relationship." *Id.* at 476, 126 S.Ct. at 1250. Section 1981 contains an "explicit statutory requirement that the plaintiff be the 'perso[n]' whose 'right ... to make and enforce contracts,' § 1981(a), was 'impair[ed],' § 1981(c), on account of race." *Id.* at 478, 126 S.Ct. at 1251. "[P]laintiffs must identify injuries flowing from a racially motivated breach of their own contractual relationship, not of someone else's." *Id.* at 480, 126 S.Ct. at 1252.

Plaintiffs contend that, although they were not a party to the contract between Wells Fargo and the Tribe, they were an applicant for a loan from Wells Fargo in 2001 to build Taco Johns restaurants and their plan at that time included selling the propane business. They contend that the sale of the propane business was thus a stage in their own contractual process. However, I have previously found that the claims surrounding the plaintiffs' 2001 loan application were not timely filed.

Plaintiffs contend that, since the sale of the propane business to the Tribe would have allowed them to pay off existing loans to Wells Fargo, the loan to the Tribe was a "stage" in plaintiffs' existing contractual relationship with Wells Fargo. Plaintiffs also contend that they have stated a claim under § 1981 because they were parties to the Tribe's contractual promise to close the sale of the propane business. Plaintiffs cite no authority for either of the foregoing propositions. The Supreme Court pointed out in a footnote in <u>Domino's Pizza v. McDonald</u> that "we do not mean to exclude the possibility that a third-party intended beneficiary of a contract may have rights under § 1981. Neither do we mean to affirm that possibility." *Id.* at 476 n. 3, 126 S.Ct. at 1250 n. 3.

### C. 42 U.S.C. § 1982.

In its reply brief, defendant states that it is not seeking dismissal of the plaintiffs' § 1982 claims set forth in the plaintiffs' fifth claim for relief. Nonetheless, I am required to determine whether standing exists as to this claim.

Section 1982 provides:

All citizens of the United States shall have the same right, in every State and Territory, as is enjoyed by white citizens thereof to inherit, purchase, lease, sell, hold, and convey real and personal property.

The threshold inquiry in this case under § 1982 is the relationship between the alleged actions of Wells Fargo related to the Tribe's loan application and the property interests of the plaintiffs. City of Memphis v. Greene, 451 U.S. 100, 123, 101 S.Ct. 1584, 1598, 67 L.Ed.2d 769 (1981).

Plaintiffs' alleged property interest is their right to convey their interest in the propane company. At least one district court has held that a homeowner could maintain an action under § 1982 against the prospective buyer's bank where it was alleged that the bank denied the buyer's loan application on the basis of the racial makeup of the homeowner's neighborhood. Doane v. National Westminster Bank USA, 938 F.Supp. 149 (E.D.N.Y. 1996).

> Scott and Sims enjoy a right not to be discriminated against based on their race in applying for a mortgage. Equally important, however, is Doane's right to sell his house free from racial discrimination based on the composition of his neighborhood. Even if Sims and Scott were white, they still would have a right to apply for a mortgage free from discrimination based on the racial composition of the neighborhood in which the property is located. Because Doane is asserting his own rights in this suit, rights that exist independent of the buyers' rights, the Court finds that jus tertii does not apply to the facts of this case. Plaintiff, as a homeowner in a minority neighborhood, is asserting his own rights under the Civil Rights Act to sell his property free from discrimination.

Doane v. National Westminster Bank, 938 F.Supp. at 151.

I am not convinced at this stage that plaintiffs lack standing as to their § 1982 claim arising out of the Tribe's loan application to purchase plaintiffs' propane business.

## ORDER

Now, therefore,

IT IS ORDERED:

1. The motion, Doc. 29, to dismiss plaintiffs first claim for relief is granted.

2. The motion, Doc. 29, to dismiss the Fair Housing Act, Equal Credit Opportunity Act, and 42 U.S.C. § 1981 claims set forth in the plaintiffs' fifth claim for relief is granted.

Dated this 9th day of January, 2009.

BY THE COURT:

CHARLES B. KORNMANN
United States District Judge

ATTEST:
JOSEPH HAAS, CLERK

BY: _____
      DEPUTY
(SEAL)